For the appellant, Mr. Walter. For the appellees, Mr. Rabin, Mr. Wilson, Mr. Green. Who's going to talk? You've divided your time. You're both set. Okay. Very well. You may proceed. Good afternoon. May it please the court and counsel. The unique fact in this case is that at the time he wrote Mr. Roby's will in 2004, L. Milton McClure was the Chairman of Donor Relations for the not-for-profit organizations who are the offenders in this case. As a result of that fact, it's the plaintiff's position that there are two analyses which lead to the conclusion that they should be permitted to pursue this claim. The plaintiffs had no right to inherit, did they? So the gist of our argument is that yes, that will was supposed to keep them as the heirs. Is there a will contest still pending? There is a will contest, but as I understand it, it is now currently in this court.  Separate proceeding. Related to that, both parties recognize there are exceptions to the rule that you cannot pursue a tortious claim when there is a will contest available. There are cases where assets have been dissipated during the period of time before the death of the person who wrote the will. There are cases where the plaintiff won't recover through intestacy and therefore they are able to provide or pursue a separate claim. One of the cases that we cite is the Ogle case. It's actually cited by both parties. In that case, two nephews were to be heirs of the will of their aunt and uncle. And the attorney who drafted that will, who importantly had no personal interest in that will, and no conflict of interest with any third party, simply made a mistake. He left a hole in the estate so that when the uncle and aunt died within a 30-day period but not in the same kind of disaster, the nephews were in effect eliminated from the will. The court allowed them to pursue a claim. Our position is that in this case, this should be also recognized as an exception. If plaintiffs can pursue a claim where the attorney has no personal interest in the distribution of the funds, has no conflict of interest with a third party, surely plaintiffs should be able to pursue a claim where they are alleging conflict of interest, a violation of both professional conduct, and a personal interest in those funds. If an attorney can build a wall that prevents a potential plaintiff from bringing a claim by simply saying those people were never intended to be part of the will and writing it as he or she sees fit for the benefit of the third party, that doesn't seem to make any sense in light of these other cases. That surely is more egregious behavior than the attorney in Ogle who simply made a mistake. In Ogle, did they refer to will contest matters? They did. Wouldn't that apply here? No, but in that case they allowed the plaintiffs to pursue even though there was a will contest. Because if they pursued a will contest in that case and prevailed, they were still out because the will had been misdrafted and put them out. So our position is that those plaintiffs are allowed to pursue. When it's simply a mistake by a lawyer having no personal interest, and surely the plaintiffs in this case where they're alleging personal interest and a violation of quote, a professional conduct, that they should be allowed to pursue as well. The other analysis that we think leads to the conclusion that plaintiffs should be able to proceed in this claim is that it's a totally separate cause of action. We've alleged legal malpractice here. The violation of the Illinois Code of Professional Conduct has nothing to do with an undue influence claim. I had trouble trying to figure out what duty did the law firm owe to the plaintiffs? Well, I think the law is that any lawyer drafting a will document has an obligation to the beneficiaries. And that's why I'm saying if in the case of Ogle where there's a mistake and the court says these people, these nephews can come back and pursue a claim when it's simply a mistake, what the defendants are saying here is that look, there was never intent to include the family in the 2004 will. But that doesn't make any sense, that conclusion, because our allegation is that they were supposed to be beneficiaries and we agree that it wasn't a mistake, but you did it on purpose, which is much more egregious behavior than simply making a mistake. The lawyer who wrote it was a director of donor relations for the not-for-profit that was listed as the beneficiary to get all the money. So there's no reporting of a conflict of interest. In fact, in the hearing on the will, Mr. McClure specifically says, I steered away from that, I never brought that up, never told the client like he was supposed to. Didn't mention that he had a fiduciary duty to Ansar and to the Shrines. In addition to that, it appears that this is not an undue influence case, but it's more of an obfuscation of the true facts. There was no reason for Mr. McClure to go through all the machinations he went through in 2004 if Mr. Roby indeed wanted to make these not-for-profits the beneficiary of his will. All he had to do was change the trust. He didn't have to redo the will one day. He didn't have to redo the trust four days later. He didn't have to get rid of the advantages of a non-probate procedure that had already been set up. It all smacks of an attempt, well, in addition to that, at the same time he disinherits the children, leaves one as the executor and two others as successor trustees. I mean, it doesn't make any sense. These are all issues that relate to medical malpractice and really have nothing to do with the will contest. In our opinion, these actions taken by Mr. McClure are certainly not representing a reasonable degree of professional care and skill. It's also clear from the cases we've cited that plaintiffs have a right to pursue more than one concurrent and consistent remedy even though the remedies might be the same and they can do that simultaneously. So we think that, one, these facts fall under an exception to the rule that you can't pursue a tortuous claim when there's a separate will contest available. And secondly, we're talking about a whole separate cause of action. There's other issues in this case. Briefly, the defendants, Ansar and Shriners, have taken the position that they are not responsible for any of the actions of Mr. McClure. We think there's three reasons why that's not true. One is he held many offices with those organizations and, again, was the chairman of donor relations at the time that this will was written. It's hard for me to imagine that they weren't encouraging him to raise funds, knew he was a lawyer, and therefore should be bound by any actions that he took. Regardless of that, in citing the Horowitz case, which the defendants cite, there's no question that Ansar and Shriners authorized his activities. I mean, they obviously knew what he was doing, and even more importantly, they've certainly ratified what he's done. From the date of Mr. Roby's death until today, they've taken the position that these funds or assets in excess of $2 million belong to them and not to the children. Which leads us to the last part of the complaint, and that is the conversion or theft issue. Again, the cases cited by both parties indicate that in order to have conversion, we would not have to prove that Ansar or Shriners have actually recognized some benefit, as we sit here today or prior to today. We only have to prove that their activities have kept my clients from obtaining assets that they would otherwise have at their disposal. And clearly that's the case here. But for the activities of the defendants in this case, either pursuant to infestacy or by will, the children of Mr. Roby would now have those assets. So it's only their activities which have prevented it. Thank you. Other than the case you cited where the mistake was the issue and a separate proceeding was permitted, what is the exception? I mean, does that case stand for the exception? There's a series of exceptions. A couple of the cases talk about, and they're cited in our brief, that talk about an exception if there is legal negligence that results in the assets not going where they were supposed to go. The reason for that is that's a separate cause of action than a will contest, and so you could lose a will contest but win the legal malpractice case. The other ones are mentioned by defendants as well, and those are the ones where an individual would not take by infestacy, where from the time the will was written until the time the will was admitted to probate, a lot of the assets had dissipated. So even if you prevail, at the end you're missing assets that are gone. So all of these are exceptions to the general rule that you can't file a tort claim if there's a will contest available, not just pending but available. Well, in this case, though, we're not talking about legal negligence, I don't think. Well. You're asserting that it's the equivalent of undue influence or close to undue influence. I'll admit there's overlapping. I think the fact that Mr. Roby was 84, had some health problems, that Mr. McClure had written a letter that recognized that he was already subject to unscrupulous third parties, that people knew that he may not be making the best decisions. But it's not a complete overlap, and our point is to say you can't pursue the legal malpractice case because you have a will contest pending. Those issues would have to overlap entirely. That's why there's those exceptions. You don't have a complete overlap in those cases. You've got other issues. And we do think it's legal malpractice. The violation of the Code of Professional Procedures alone is enough to be legal malpractice. Does that have been reported? Don't know. But clearly there was a conflict here. He's sitting there between an organization where he holds an office, he's the chairman of donor relations, and a family, and the assets can't go to both places. It's one or the other. And he testifies that he specifically steered clear of mentioning that to Mr. Roby. Thank you. Thank you, counsel. Good afternoon. Your Honor, may it please the Court, Tom Wilson on behalf of the Schweiner's Hospitals for Children, and I'll also be addressing the agency issue which was raised by the Ansar Temple. There's a simple fundamental fact in this case that supports the trial court's judgment, and that is that the plaintiffs in this case are the sole heirs of Mr. Roby, and they are the beneficiaries. Keep your voice up. The plaintiffs in this case, Your Honor, are the sole heirs of Mr. Roby, and they are the beneficiaries under his prior estate plan. And if they are successful on the will contest that they filed in Schuyler County, they will inherit everything. And under those facts, the Robeson Court and the cases since then, most recently with the Ellis decision last year from the Supreme Court, recognized that the plaintiffs do not have a separate cause of action for tortious interference with an expectancy when they can pursue a will contest. They have pursued that will contest. It was dismissed by Judge McMillan in Schuyler County. It was refiled. It was dismissed on the amended petition. And when they conceded that they had no additional facts to allege, it was appealed to this court, and it is pending and scheduled for oral argument next month. Counsel, is there any conceivable circumstances, matter of law, where the plaintiffs could lose the will contest and still have a viable cause of action here? Under these facts, no, there is not. Why not? Because if they establish that the will was the product of undue influence, and that is the claim, then they inherit, whether it's through intestancy or it's through the prior estate plan. If, however, they lose the will contest, as they have to this point, then what is set forth in the estate that is being challenged is Mr. Robey's will. He is competent, and that has never been questioned. It has never been alleged that he was incompetent. And there was no undue influence making him do something that he did not want to do. He meant to leave the assets to the Shriners Hospitals for children. They have no separate claim in tort that they can bring under the case law. So they can't sue Mr. McClure, the attorney who drafted the will, if the will contest is lost on the grounds that he yielded them some sort of duty? That is correct, Your Honor. That really gets into the issue about the legal malpractice, but the plaintiffs in this case clearly were not the third-party beneficiaries of the services Mr. McClure was providing to Mr. Robey such that they would have the ability to bring a legal malpractice action. Why weren't they? Because the purpose of the representation that Mr. Robey sought from Mr. McClure was not to benefit his children. That brings me to the Oval Decision, which I think is a perfect example of where that type of a claim can be brought and the one that the plaintiffs rely on for their exception argument in this case. There was no question in that case that the purpose of the legal services being provided by Mr. Featon was to benefit the nephews. It was simply through a careless drafting error that left this hole in the estate plan. There was no question that the testators were incompetent or were under influence. It was simply that there was a mistake in drafting, such that the way that the uncle and aunt happened to die within 15 days of each other left the nephews, who were the intended beneficiaries, out of luck. And the court in the Oval Case, very clearly in distinguishing its Robinson decision from the prior year, states, We find Robinson distinguishable in that the basis for the plaintiff's complaint was that the testator had been subject to the undue influence of her attorney. Claims of undue influence are properly raised in a will contest. And in this case, these plaintiffs have filed a 50-page complaint, which is part of the record, in support of our motion to dismiss, on the will contest, going through all these facts about Mr. Roby's alleged diminished capacity, Mr. McClure's associations with the Shriners, the circumstances of the will execution, the prior testamentary scheme. That's all part of their will contest based on undue influence. That is their remedy. They will either win or lose in the will contest. To briefly address the issue about agency, if you read the complaint that has been filed, there's not even the conclusion alleged that Mr. McClure was acting as the attorney for Mr. Roby. He was the agent of the Ansar Shrine, let alone any facts from which you could conclude that the Ansar Shrine had the right to control Mr. Roby, or excuse me, Mr. McClure. Is that a question of fact? Well, that's a pleading issue. If they don't allege the facts from which you can't reach that conclusion, then the complaint is subject to dismissal. And in this case, they've not even alleged the ultimate conclusion, let alone any facts. The last point I would like to address in support of affirmance of the trial court, Your Honor, Where did we get all these facts? I'm sorry? Where did we get all these facts about the attorney being high up in the Ansar Shrine and all this? There is one paragraph in the complaint that references what Mr. McClure's positions were with the Ansar organization, but nothing with regard to what his duties were, or any knowledge of the organization as to what his practice of law included, or anything whatsoever to do with Mr. Roby. Much of the factual discussion that's contained in the plaintiff's statement of fact in their brief is actually drawn from the will contest complaint that is attached in the record in support of our motion to dismiss. It doesn't come from their complaint that was dismissed by the trial court in this case. And on the last point of the claim of conversion, or what the plaintiff's term is, theft, one of the essential elements is they have to show that they had an immediate right to possession of the assets. And as adult children, they have no absolute right to inherit from their father. In this case, when Mr. Roby passed away, his assets became part of his estate, and they will be distributed through the estate either to his beneficiaries, as he selected, if his will is valid, or to his children if his will is invalid and distributed either through intestacy or the prior testamentary scheme. But there is no basis in this case to prove, as a matter of law, that the Shriners, either organization, deprived the plaintiffs of anything that they had an immediate right to possession. And therefore, the conversion count was correctly dismissed as well. There are no questions. Mr. Green, I believe, is going to address the issues regarding Mr. McClure and his law firm. Thank you. All of the claims against Milton McClure and his law firm were properly dismissed. All of them are essentially tort claims, and the case law is very clear. The Hoover case from many years ago and the recent Illinois Supreme Court case in Ellis, that if the plaintiffs want a remedy for those types of tort claims, they have to go to the Supreme Court. They have to do it through a will contest. Well, you know, God just was interested. Has this been reported to the ARDC? I'm unaware of any report. If the plaintiffs win the will contest, they are made whole. They acknowledge that. All of Mr. Roby's assets will pass through the probate proceeding. And if Mr. McClure supposedly did all these bad things, that's something that should be taken up in the will contest. Undue influence. Invalidate the will and apply the prior will. The plaintiffs have been given that opportunity. Now, of course, there's an issue. Can they maintain a will contest action in Schuyler County and then a separate action against Mr. McClure for legal malpractice in Cass County? They can't do that. There are several exceptions which might allow them to do that, but they don't apply in this case. Mr. Wilson covered that quite well. There's the Ogle case where the plaintiffs were disinherited and it would have done them no good at all to pursue a will contest. The will was valid, but the lawyer who drafted the will made a very bad mistake, very poor draftsmanship, and it appeared as if the real intention was to benefit those nephews. Therefore, there was a legal malpractice action. Here, if you look at the will that is at issue, there's no reference at all to the plaintiffs. The attorney's duty is to his client. The client was Charles Roby. The client was not Charles Roby's children. There are exceptions to that where the third-party beneficiary, there's a duty from the lawyer to the third-party beneficiary, but that has to be where it's clear that the will intended to benefit those folks. And there is no such allegation in this case. There's no inference. There's nothing in the record that would support that. Mr. Green, if the plaintiffs lose their undue influence case, do they have any case left here? They don't. The Hoover case addressed that. Essentially, if plaintiffs lose the will contest, they have no cause of action. Why is that? On the particular facts that Mr. Walter is alleged on behalf of the plaintiffs there? The reason, Your Honor, is because there's an adequate remedy available in the will contest that can make them whole. And again, if Mr. McClure supposedly did all these bad things, which he didn't, by the way, that were only at the pleading stage, that should be taken up in the will contest. If there was, if you, I think there's some... Well, let me ask it this way, I suppose. Is there some theory before us in this case under which it could be found that Mr. McClure did some bad things, yet the will contest is going to fail? None that I, nothing. There's nothing in the record that would support that. And there's no case law either. And I think the plaintiffs essentially acknowledge that. The only case they cite is Ogle, but we've shown that that case is factually dissimilar to what we have here. Does the record show who drafted the prior will and trust, and when that occurred? It does, Your Honor. I believe that was attached to the petition in the will contest, and then the will contest pleadings are attached to motions to dismiss... Well, what's the thumbnail sketch of that? How old was that? It was a year prior. A year prior? Yes. Who drafted that? It was not Mr. McClure. It looked to me like it was David Reed. Different lawyer, different law firm. Do the pleadings and records show how the decedent came to the attention of, or how Mr. McClure came to the attention of him? It does not. Does the record show or do the pleadings show the decedent's interest in or relationship to Ansar Shrine and the hospitals? I believe it's acknowledged by plaintiffs he was a long-time member of the Ansar Shrine. Incidentally, I think Mr. Wolter had indicated that Mr. McClure somehow works for the Shriners Hospital, and the allegation is that Mr. McClure has a position in the Ansar Shrine, which is local. The beneficiary of the will is the Shriners Hospital of Colorado, a not-for-profit charitable organization. Now those are allegations, which I suppose the court has to take as true. But even under those circumstances, I don't want to see whether there's a conflict of interest, quite frankly. But again, if there's a problem with anything Mr. McClure did under the case law, those problems should be taken up and resolved through a will contest in Schuyler County, and not in this case. And for those reasons, I would ask that the trial court be affirmed, unless the court has any additional questions. Thank you. Rebuttal? The Hoover case, that's what we talk about. We know there's exception to those cases. They're site-advised defendants, and our position is that this should be one of those cases. If you're allowed to proceed on a legal malpractice case, where there's been a simple drafting mistake by a lawyer that has no personal interest in the outcome, surely you can pursue a claim where you're alleging a violation of the Professional Code of Conduct and a personal interest on the funds going to the third party. If they're allowed to build a brick wall by simply saying the children, who were the beneficiaries for 84 years, were not meant to be beneficiaries, and just not take any discovery or any look at that, when the drafting attorney is the director of donor relations, that can't be right. What about the question I asked both counsels? Let me ask you, is there any basis, any legal theory upon which you can prevail here if you lose the undue influence case? Absolutely. I think that's the key to this. It's just like Ogle. Okay, tell me what it is. Ogle lost the lose the will contest, but he won the legal malpractice case. The nephews didn't get back in. The will was valid. They got back in because a lawyer made a mistake. Totally separate claims. In this case, we get in front of a jury. We prove the violation of the Code of Professional Conduct. We prove this ridiculousness of disinherited children and keeping them as successful trustees and as executors. We show that one document was signed in the intense heat in August in an automobile, and four days later, the same thing is done in an automobile. Mr. Roby didn't know what he was signing. I mean, that's our allegation. This money was still supposed to go to the children. A jury should be able to look at this and determine whether there's a legal malpractice in that. And a jury could say there's legal malpractice here, regardless of what happens in the will contest. It's got nothing to do with undue influence. Get tricked. What happens with respect to the Ellis case? The Ellis case. Which one's that? The Supreme Court. I don't know which case that is. Is that one where the Shriners came back and filed a claim? Is that the Ellis? Okay. You know, that's another exception. The exception in that case was that the Shriners didn't know that they were in that will back in 1969 until the 1990s. Of course, well, if you didn't know about it, you ought to be able to do something now, even though it was too late to file a will contest. So it's another exception. And I'm just saying, if you look at those exceptions, none of those are egregious as a complaint in this claim, that an attorney with a conflict of interest, without telling Mr. Robey and without talking to the children, sent the money to an organization where he's an office holder. And the office is chairman of donor relations. And amazingly, that same year, he becomes the chairman of international donations. You know, the jury should be able to look at these facts and make a determination. But the answer, I think, is yes. You could lose the will contest, but you could win either under this exception theory or the legal malpractice theory. Well, I'm not sure I understand why that is. After all, if you lose the will contest, that means there was no undue influence. Well, so your entire theory about, oh, he didn't know what he was doing, blah, blah, blah, is up in smoke, isn't it? Well, I don't think so. Well, how do you prevail on it? If he knew what he was doing, he's entitled to do it. If he knew what he was doing, but I'm saying he didn't know what he was doing. Then you'd win at the will contest. I'm not sure that's the same as undue influence. Well, for example, the violation of the Code of Professional Conduct, is that anything to do with undue influence? I mean, to me it doesn't. It's a whole separate issue. So there's a separate cause of action in violation of the Code of Conduct? Yeah. What is that? What is that? What's that tort? The tort is legal malpractice. Those standards are recognized as directives. That violation alone can be the basis for legal malpractice. And it's not the only one. It's all the other things we've cited. Disinheriting the children and keeping them as executives. Having these documents signed in the vehicle. But if this is what he wanted to do, and you can't prove otherwise, then he was entitled to do it, and there's no problem. Is that correct? But our whole allegation is it's not what he intended to do. Isn't that what the undue influence case is supposed to determine? Not in my mind. Well, I'm not sure I understand, counsel, how if let's assume there was a trial, and the trial fact says, no, no undue influence here, meaning that the decedent chose to do what he did with his own money and give it to the dog and cat hospital to the Shriners. Now what's the complaint? Well, the complaint is if you equate undue influence, which I see as leading a friend, giving somebody his trust, and having him do something that he knows he's doing. I mean, so that in this case, Mr. Roby says, yeah, I'm building a church, I'd really like to give this money to the Shriners. Worst thing is that never happened. McClure develops documents, shows them behind the office building in his own automobile, doesn't report the conflict of interest, disinherits the children but keeps them in the documents, so he sees the names of the kids in the documents. We deem that as obfuscation or trickery, not undue influence. And that case is going to be argued here next month? Well, I've heard of counsel. Okay. Briefly, we did allege in the complaint, and, of course, we asked for a chance to allege a complaint and not give that opportunity. But we do allege that Mr. McClure, when he drafted those documents, was a donor relations director. At that time, he was also general counsel. That's repetitive counsel. Yeah. We understand you've used that. Yeah. But they said we didn't allege these relationships between Mr. McClure and the other defendants, and I think that we did. Your time's up, counsel. Okay. We get to meet Maypole twice. Thank you.